## AINSWORTH v. THE UNITED STATES.

APPEALS FROM INTERLOCUTORY JUDGMENTS; CRIMINAL LAW;
INDICTMENTS.

1. In a case in which an appeal was allowed by this court from an interlocutory judgment of the court below, overruling a demurrer to an indictment against the appellants for manslaughter, it was *stated* in the opinion that the appeal was allowed only in view of the peculiar circumstances of the case and of a prospect of a protracted and expensive trial, and was not intended to furnish a precedent to be lightly followed in criminal cases thereafter.

2. An indictment must be certain to every intent, and without any intendment to the contrary; and the crime must be charged with such certainty and precision that it may be understood by every one, so that the defendant may know how to defend against such charge. Hence, facts, and not merely conclusions from such facts, or conclusions of law, must be stated.

3. If several parties enter into a joint undertaking, imposing upon each a personal duty in respect to the performance of the undertaking, and upon all alike, and by the neglect or omission of such duty a casualty occurs, resulting in the death of a third party, an indictment will lie against all jointly; but in such a case, if the indictment fails to state explicitly the facts necessary to enable the court to determine whether there was a joint duty created and imposed upon all the defendants alike, and whether the culpable negligence charged in the indictment, either of commission or omission, was of a nature to involve all of the defendants in its criminal consequences, as a joint commission of crime, then such indictment is defective; and such defect can be availed of by the defendants either by demurrer or motion in arrest of judgment.

4. The indictment in such a case must also set forth sufficient facts to charge a definite duty upon each of the defendants, and give him notice of every act of negligence with which he is charged. There must be averred in the indictment facts to show that there was, in legal contemplation, a common or like personal duty on the part of each defendant; and the facts averred must not only show the neglect of that duty, but, to make the party guilty of it liable to the charge of felony, such neglect must have been personal, and the death that ensued must have been the immediate and direct result of that personal neglect of duty.

No. 268. Submitted November 11, 1893.—Decided December 4, 1893.

HEARING on an appeal from an interlocutory judgment of the Supreme Court of the District of Columbia, holding a criminal term, overruling a demurrer to a joint indictment of several defendants for manslaughter. *Reversed.*

THE FACTS are set forth in the opinion.

*Mr. R. Ross Perry* and *Mr. Henry E. Davis* for the appellants, in their brief cited Bishop's Directions and Forms, Secs. 522, 525; 1 Wharton's Precedents of Indictments and Pleas, 89, 114, 118, 134, 157, 158, 190; 1 Wharton's Cr. Law, Ch. 5; Roscoe's Cr. Ev., 702; *U. S.* v. *Holtzauer*, 40 Fed. R., 76; *Com.* v. *Hartwell*, 128 Mass., 418; *U. S.* v. *Corbin*, 11 Fed. R., 238; *Lamberton* v. *State*, 11 Ohio, 282; *State* v. *Higgins*, 53 Vt., 191, 198, 201; *U. S.* v. *Hess*, 124 U. S., 483; *U. S.* v. *McLaughlin*, 1 Cranch C. C., 444; *U. S.* v. *Browning*, 1 Cranch C. C., 330; *U. S.* v. *Craig*, 2 Cranch C. C., 36; *United States* v. *Griffin*, 6 D. C. Reports, 53; *Barth* v. *Heider*, 6 D. C. Reports, 312; *United States* v. *Cross*, 1 McArthur, 149; *In re Stephen Fauldan*, 20 D. C., 433; *Commonwealth of Kentucky* v. *Denison*, 24 Howard, 66; *Ex parte Reggel*, 114 U. S., 642; *Callan* v. *Wilson*, 127 U. S., 540; *United States* v. *Staats*, 8 Howard, 1; R. S., U. S., §§5323, 5324, 5533, 5534, 5535, 819; R. S., D. C., §§1144, 1145, 1146, 1151, 1152, 1154, 1155, 1158, 1163, 1164, 398, 431, 872; 1 Kent Com., 464; 1 Bishop's Crim. Procedure, Sec. 533; *U. S.* v. *Staats*, 8 How., 41; *Reg.* v. *Barrett*, 2 Car. & K., 343; *Reg.* v. *Pelham*, 8 Q. B., 959; *State* v. *Buster*, 90 Mo., 514; *State* v. *Holden*, 2 McCord, 377; *U. S.* v. *Barber*, 20 D. C., 79; *Com.* v. *Perrigo*, 3 Metc. (Ky.), 5; *State* v. *Drake*, 30 N. J. L., 422, 427; *People* v. *Gilkinson*, 4 Parker C. C., 26, 29; *Clifford* v. *State*, 29 Wis., 327, 328, 331; *Whitesides* v. *State*, 4 Cold., 175; *Com.* v. *Gray*, 2 Gray, 501; *Davis* v. *State*, 23 Tex. Ap., 637; *State* v. *Green*, 3 Heisk., 131; 1 Bish. Cr. Proc., sec. 585, and cases cited; *The Nitro-glycerine Case*, 15 Wall., 524; 3 Greenl. Ev., sec. 129; *State* v. *O'Brien*, 32 N. J. L., 171; *Regmaiden's Case*, 1 Lewin C. C., 180; *Rex* v. *Lloyd*, 1 C. & P., 301; *Queen* v. *Pocock*, 17 Q. B., 34; *Reg.* v. *Gregory*, 2 F. & F., 153; *Reg.* v. *Gray*, 4 F. & F. In the brief for the appellants the following cases were distinguished: *Reg.* v. *Swindall & Osborne*, 2 C. & K., 230; *Queen* v. *Salmon*, 6 Q. B. D., 83; *Anderson & Woods* v. *State*, 27 Tex. Ap., 177;

*Reg.* v. *Haines*, 2 C. & K., 371 ; *Regina* v. *Trainer et al.*, 4
F. & F., 105 ; *Regina* v. *Wagstaffe et al.*, 10 Cox C. C., 530 ;
*Regina* v. *Gregory et al.*, 2 F. & F., 153 ; *Regina* v. *Conde
et al.*, 10 Cox C. C., 547 ; *State* v. *Sutton et al.*, 10 R. I., 159 ;
*People* v. *Buddensieck*, 103 N. Y., 488.

*Mr. A. A. Birney*, United States Attorney for the District
of Columbia, for the United States.

The CHIEF JUSTICE delivered the opinion of the Court:

This case is brought into this court on appeal from an
interlocutory judgment of the court below, rendered on a
demurrer to an indictment against the defendants for man-
slaughter, whereby the demurrer was overruled and the de-
fendants required to plead. It was owing to the peculiar
circumstances of the case, with the prospect of a very pro-
tracted, laborious and expensive trial, that this court deemed
it proper and to be in the interest of justice to allow the
defendants to bring their case here by an appeal, and to be
heard as to whether there was a sufficient indictment against
them upon which they could be tried and convicted. We
deem it proper, however, to say that this case will not fur-
nish a precedent to be readily and lightly followed in the
future practice of the court, for, to afford facility to the
allowance of appeals in criminal cases from mere interlocu-
tory judgments would greatly obstruct and delay, and in
many cases seriously embarrass, if not entirely defeat, the
fair and speedy administration of the criminal law in this
District. We must avoid producing such a result.

The indictment is against four persons, namely, Ains-
worth, Dant, Covert, and Sasse, charging them with the
omission or neglect of duty, whereby death was caused to
one Frederick B. Loftus, named in the indictment. The
occasion of the alleged omission or neglect of duty, and the
resulting death of the party named, was the change or alter-
ation attempted to be made in the interior foundation sup-
porting walls or piers of that ill-fated building, on 10th
street between E and F streets, in the city of Washington,

known as " Ford's Old Theater." The building was used by the government as the record and pension office of the War Department; and the purpose of the change or alteration in the foundation of the interior supporting walls or piers, was the preparation for the introduction of an electric lighting plant or apparatus for lighting the building. The building, and the official work conducted therein, and all the clerks engaged in the work, were under the direction and control of Col. Ainsworth, one of the defendants charged in the indictment. On the 9th of June, 1893, the time of the occurrence of the appalling catastrophe referred to in the indictment, the building was filled with clerks and employees of the government.

The indictment contains but a single count. It is very long and elaborate, and states at great length the full particulars of the structure, and the relations of the several parts of the building, the one to the other, and the dependence for security of the several floors of the building upon the interior foundation walls or piers; and of which dependence, it is alleged, the defendants had knowledge.

It is then averred that Ainsworth and the other defendants undertook and assumed the performance of all and every part of the work, which became and was necessary, to permit of the introduction into the building of the electric light plant; and such work was being performed, and while being so performed, it was under the entire care, charge, control, management and supervision of the defendants; and having undertaken and assumed the performance of the work, and having the entire care, charge, control, management and supervision thereof, it became and was their duty to so regulate and conduct the performance of the work, and all parts thereof, as not to endanger the stability of the second and third floors of the building; and to do and to cause to be done, and to require to be done, everything in their power, and to use and exercise every care and precaution in their power, necessary to render and make the performance of the work, and each and every part thereof, safe

and secure, and free from danger to the lives of the persons in the building for the time being, among whom was Loftus, the party whose death was caused by the alleged omission or neglect of duty by defendants.

But, as alleged by the indictment, being wholly unmindful, neglectful, and regardless of their duty in that behalf, the defendants did wilfully and feloniously neglect and omit to so regulate and conduct the performance of a part of the work, to wit, the work of excavating and removing the earth from around, about, and under the pier at the west end of the most northerly of the two interior walls of the central cellar, as not to endanger the stability of the said second and third floors of the building; and then and there, &c., did wilfully and feloniously further neglect and omit to do, and cause to be done, and to require to be done, everything in their power, and to use and exercise every care and precaution in their power, necessary to render and make the performance of the part of the work last mentioned, safe and secure, and free from danger to the lives of the persons in the building at the time being; but being so wholly unmindful, neglectful, and regardless of their duty in that behalf, to the contrary, did then and there, &c., improperly remove, and cause to be removed, and suffer and permit to be removed, from around, about, and under the pier last aforesaid, the earth, supporting the same, without first having relieved, or caused said pier to be relieved, by the device called shoring, *or in some other feasible way*, from the great pressure upon it of the weight of the iron columns, beams, &c., and parts of the second and third floors immediately above it. By reason of which most culpable negligence, acts and omissions of the defendants, the said last-mentioned pier did then and there sink and break; and the columns, beams, and the parts of the second and third floors immediately above said pier, did then and there give way and fall down to and upon the first floor, and down into the excavation, made under the said first floor for the extension of the said central cellar; and the defendants thereby did, then and

there, wilfully and feloniously give the said Loftus divers mortal wounds, of which he then and there instantly died.

The defendants demurred to the indictment, and assigned in support of the demurrer four specific grounds for quashing the indictment. The grounds assigned are these:

1. That the indictment shows upon its face a misjoinder of the defendants.

2. That there is a failure to charge any definite individual duty upon the defendants, and that there is no notice given them of the particular act of negligence for which they are sought to be held liable.

3. That, by the indictment, the defendants are charged with an illegal measure of care and diligence; and

4. That the indictment charges upon the defendants a criminal responsibility for the alleged omission of a joint or common duty, but does not charge that there was an *exclusive duty* upon any one of the defendants, &c., in respect to any portion of the work.

It is certainly a fundamental principle in the common law, that every party accused of crime is entitled to have every essential fact that enters into the definition of the offense, set forth in an indictment, with such full and entire accuracy, that the offense may judicially appear to the court in pronouncing judgment thereon, whether upon demurrer or after conviction. This is especially necessary where the act or omission charged as producing the injury is not in itself necessarily unlawful, but only becomes so by its peculiar circumstances and relations to the result that follows, in the natural sequence of events. In such case, every matter of fact essential to show the illegality of the act or neglect must be fully set forth; and the omission of any fact or circumstance necessary to constitute the offense will be fatal. 2 Hawk., Pl. C., 25, Sec. 57; 1 Whart. Cr. Law (7th ed.), Sec. 285. The indictment must be certain to every intent, and without any intendment to the contrary; and the crime must be charged with such certainty and precision that it may be understood by every one, so that the party may

know how to defend against such charge. Hence, facts, and not mere conclusions from facts, or conclusions of law, must be stated. 1 Chitty Cr. Law, 172. Or, as declared by the Supreme Court of the United States, in the recent case of the *United States* v. *Hess,* 124 U. S., 486: " The general, and, with few exceptions, * * * the universal rule, on this subject, is, that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective. No essential element of the crime can be omitted without destroying the whole pleading. The omission cannot be supplied by intendment, or implication, and the charge must be made directly and not inferentially, or by way of recital." And again, in the same case, quoting from the previous case of the *United States* v. *Cruikshank,* 92 U. S., 542, the court said: " The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place and circumstances." Authorities to the same effect could be added to an indefinite extent, but it is unnecessary.

Now, with these general principles in view, as to the requisite certainty and precision of the allegations of the indictment, we may turn to the specific grounds of objection taken to the indictment under the demurrer.

1. First, then, with respect to the objection founded upon the supposed misjoinder of the defendants. In the very full and able arguments made at the bar, both against and in support of the indictment, no case or authority directly in point on this question, in a case resembling the present, was produced. We are decidedly of opinion, however, that there

is nothing in the *nature of the offense* charged that would make it improper to join the defendants in the indictment. Treating the indictment as being for negligence in the omission of duty only, whereby death was produced, it is not difficult to conceive a state of case that would support such an indictment. If several parties enter into a joint undertaking, imposing upon each a *personal duty* in respect to the performance of the undertaking,*and upon all alike ;* and by the neglect or omission of such duty the casualty occurs, resulting in the death of a third party, we can perceive no reason why an indictment would not lie against all. But whether, in the indictment before us, sufficient facts are charged to connect all the defendants with the disaster that resulted in the death of Loftus is another and a different question.

In 2 Hawkins, Pl. C., Ch. 25, Sec. 89, the rule as to the joinder of defendants in an indictment is stated with as much clearness as will be found elsewhere; and it is there said that it seems certain at this day, that notwithstanding the offense of several persons cannot but in all cases be several, because the offense of one man cannot be the offense of another, but every one must answer severally for his own crime, *yet if it wholly arise from any such joint act,* which in itself is criminal, without any regard to any particular personal default of the defendant, as the joint keeping of a gaming house, etc., the indictment may either charge the defendants jointly and severally, or may charge them *jointly only*, without charging them severally, *because it sufficiently appears from the construction of law*, that if they *joined in such act,* they could be each of them guilty; and from hence it follows, that on such indictment some of the defendants may be acquitted, and others convicted; for the law looks on the charge as several against each, though the words of it purport *only a joint charge* against all. Where, from the nature of the act itself, it of necessity purports to be the joint act of several, there the indictment should be joint. And it has been held, says Hawkins, that one indictment against two justices for not inquiring of a riot was maintainable.

Now, in reading this indictment, the question naturally presents itself, how were the defendants joined or united in obligation to adopt the necessary means to avoid the disaster that occurred? The answer to this question ought to be plainly and explicitly furnished by facts set forth in the indictment. It must not be left to inference, or be averred as a mere conclusion from primary facts, or as a conclusion of law from such facts. But the facts to show the relation of the defendants to the work, and what participation each of them had or *should have exercised* in directing, regulating and conducting the work, to justify the joint charge against them all, that they improperly removed, and caused to be removed, and suffered and permitted to be removed, from, around and about the pier, the earth supporting the same, without having first relieved, or caused the pier to be relieved, by the device called shoring, *or in some other feasible way*, from the great pressure thereon, should all have been fully set forth in the indictment. It is true, it is alleged, that the four defendants *undertook and assumed the performance* of all and every part of the work, and *were concerned* in the performance of the same, and that they had entire care, charge, control, management and supervision of the work. But these are simply general conclusions stated from precedent facts—the conclusions drawn from such facts by the pleader. The facts should be stated upon the face of the indictment, that the court could, by legal construction, determine whether there was a joint duty created and imposed upon all the defendants alike; and whether the culpable negligence, either of commission or omission, was of a nature to involve all the defendants in its criminal consequences, as a joint commission of crime. It is very clear the obligation to perform the duty alleged, must be shown, by appropriate averments of fact, to have rested on all the defendants *alike*. Such averments of fact are wanting in this indictment. And this defect in the indictment is available to the defendants, either by demurrer or motion in arrest of judgment. 1 Whart. Cr. Law (7th ed.), Sec. 432.

2. The next question is, whether the indictment charges a definite duty upon the defendants, and gives them notice of the act of negligence of which they are charged.

This question is nearly allied to and would seem to be involved, to a large extent, in the determination of the preceding question.

The charge is, that all four of the defendants assumed and undertook the work of change and alteration in the foundation and supporting walls or piers of the building, in order to introduce an electric light plant; and that, having so assumed and undertaken the work, the same being under the entire care, charge, control, management and supervision of the defendants, it thereupon became and was their duty to so regulate and conduct the performance of the work, and all parts thereof, as not to endanger the stability of the floors of the building, etc.; but that the defendants did willfully and feloniously neglect and omit to so regulate and conduct the performance of a part of the work, etc. It is not charged or shown what relation each of the defendants bore to the work in the building—whether they were, or either of them was, architect, builder, contractor, superintendent or laborer on the work. It is not charged or shown that defendants were present, supervising and directing the work; or how or in what right or capacity it was their duty to have directed and controlled the same. As we have already said, facts must be averred on the face of the indictment, to show that there was, in legal contemplation, a common or like *personal duty on* the part of each of the defendants; and the facts averred must not only shown the neglect of that duty, but, to make the party guilty of it liable to the charge of felony, such neglect *must have been personal, and the death that ensued must have been the immediate and direct result of that personal neglect of duty*. *Reg.* v. *Pocock et al.*, 17 Q. B., 34. The essential facts to show such state of case are wanting. The charge in this indictment is too general and indefinite to form the basis of a conviction and judgment, and, therefore, the demurrer should have been

sustained. *United States* v. *Cruikshank*, 92 U. S., 542, 548, 559 ; *United States* v. *Hess*, 124 U. S., 483, 488.

It is unnecessary to examine the other grounds of objection taken to the indictment. But, for the reasons we have assigned, the interlocutory judgment of the court below, overruling the demurrer and requiring the defendants to plead, must be reversed, and the cause be remanded that the indictment may be quashed; and it is so ordered.

*Judgment reversed and cause remanded.*