## UNITED STATES v. GEARE et al.

(Court of Appeals of District of Columbia. Submitted November 5, 1923. Decided December 3, 1923.)

No. 3943.

1. **Homicide ⬅️134—Indictment for involuntary manslaughter against parties constructing theater that collapsed, causing death, not alleging contract, held insufficient.**

An indictment charging defendants with involuntary manslaughter for a death resulting from the collapse of a theater, alleging that defendants undertook and assumed jointly to construct the building, one was to furnish the steel and one the cement, one to draw the plans, one to superintend the construction, and another to inspect the work, but not alleging any contract, or in what way any one of the defendants could be responsible for the neglect of the others, *held* insufficient.

2. **Criminal law ⬅️59(1)—To charge one defendant with acts of another, joint undertaking must be shown.**

Before one defendant can be held responsible for the criminal neglect of another, the connection or joint character of the undertaking must clearly appear; it not being sufficient to establish merely a common purpose.

3. **Homicide ⬅️134—Indictment against parties constructing theater that collapsed held not sufficiently to allege negligence.**

An indictment charging the persons constructing a theater with involuntary manslaughter for a death resulting from the collapse of the theater *held* not to sufficiently allege criminal negligence.

4. **Indictment and information ⬅️71—Essential elements of indictment stated.**

An indictment should contain every essential fact necessary to clearly define and set out the crime with sufficient accuracy and completeness to support a judgment, either on demurrer or conviction.

5. **Indictment and information ⬅️93—Reason for requiring allegation of all facts essential to definition of offense stated.**

The reason for the requirement that all the material facts and circumstances essential to a clear definition of the offense must appear in the indictment is to furnish accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause, and to inform the court of the facts alleged, so that it may decide whether they are sufficient to support a conviction.

Appeal from the Supreme Court of the District of Columbia.

Reginald W. Geare and others were indicted for involuntary manslaughter. From a judgment sustaining demurrers to the indictment, the United States appeals. Affirmed.

Peyton Gordon, of Washington, D. C., for the United States.

J. W. Hazell, J. C. Gibson and C. B. Garnett, all of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, VAN ORSDEL, Associate Justice, and MARTIN, Presiding Judge of the United States Court of Customs Appeals.

VAN ORSDEL, Associate Justice. This appeal is from the judgment of the Supreme Court of the District of Columbia, sustaining de-

murrers to an indictment charging defendants, appellees, with the crime of involuntary manslaughter.

[1] The indictment is the result of an investigation into the cause of the collapse of the Knickerbocker Theater, in the city of Washington, on the evening of January 28, 1922. The charge is based upon the alleged joint negligence of the defendants in connection with the construction of the theater building, which it is charged resulted in the death of one Mary Ethel Atkinson.

The first three paragraphs of the indictment are devoted to a statement of the plan and determination of certain unnamed persons to construct the Knickerbocker Theater. The indictment in effect charges the defendants with the duty of informing themselves "as to the quality, strength, and sufficiency of all and every part of the material furnished and work done in and upon said Knickerbocker Theater prior to the erecting and placing of his materials, and prior to or doing of his work in and upon such Knickerbocker Theater," and that during the period of construction, from September 1, 1916, to December 22, 1918, the defendants undertook and assumed to construct, erect, and build, and "to plan, design, fabricate, furnish materials for, construct, build, superintend, supervise and inspect and to exercise control and charge over planning designing, fabricating, furnishing materials for, constructing, building, superintending, supervising, and inspecting, such Knickerbocker Theater."

It is then charged that defendants "by so undertaking and assuming, as aforesaid, thereby then and there did unite and join themselves with one another in an obligation to adopt the necessary means to perform and carry into execution the undertakings and assumptions as aforesaid," in such manner that the structure when completed might be safe. The duties of the defendants are then set out as follows:

"The said Reginald W. Geare did design and draw the plans and specifications for, and exercise the general direction and supervision of, the work on, and did superintend the construction of, such Knickerbocker Theater, and the said John H. Ford did design, fabricate, and furnish, and exercise control and charge of the designing, fabricating, and furnishing of, the structural steel and iron for the erection and construction of such Knickerbocker Theater, part of such structural steel and iron consisting of the trusses, columns, beams, and connections therefor, and the rivets, bolts, and plates for assembling the same; and the said Richard G. Fletcher did furnish and exercise control and charge of furnishing the cement and concrete, and brick, stone, and hollow tile for the erection, building, and construction of such Knickerbocker Theater, and did construct and erect and build, and exercise control and charge of the construction, erection, and building of the walls, floors, and roof slab of such Knickerbocker Theater; and the said Donald M. Wallace did superintend generally and supervise the construction and erection and building of such Knickerbocker Theater; and the said Julian R. Downman did examine and inspect such Knickerbocker Theater in the course of its construction, erection, and building, and did inspect and examine the structural steel and iron and concrete work of such Knickerbocker Theater."

After further allegations to the effect that defendants were working together and co-operating in unison in the construction of the building, it is charged that each of the defendants unlawfully, feloniously, and carelessly failed and neglected to perform their respective duties in a

careful and skillful manner. It is then charged that the several defendants well knew that the Knickerbocker Theater prior to and at the time of the accident was "as a result of the several and joint failures and neglects hereinbefore stated, in a dangerous and unsafe condition and in consequence of improper and inadequate plans and designs for the construction of such Knickerbocker Theater; in consequence of inherent faults and weaknesses, faulty construction, and insufficient strength and placing of materials, improper assembling of materials, insufficient provisions for the support of the weight of the roof and roof slabs thereof upon the walls thereof and upon the structural steel and iron work fabricated and erected for the support of said roof and roof slab, and in consequence of inadequate supervision and superintending and in consequence of inadequate inspection and in consequence of other conditions," the completed building was in an unsafe and dangerous condition, and that by reason thereof the accident occurred which was "the direct, immediate, and inevitable result of gross negligence and want of skill as to the matters aforesaid," and that defendants were grossly negligent in failing "to notify and warn the said Mary Ethel Atkinson and the owners, managers, and users of such Knickerbocker Theater, and the said patrons thereof, whose names are to the grand jurors as aforesaid unknown, of the dangerous and unsafe condition of such Knickerbocker Theater."

Upon the foregoing averments it is charged that the defendants "the said Mary Ethel Atkinson, in the manner and by the means aforesaid, on the 28th day of January, 1922, and at the District of Columbia aforesaid, feloniously and unlawfully did kill and slay, and so did then and there commit manslaughter, against the form of statute in such case made and provided, and against the peace and government of the said United States."

At the outset we are confronted by the question of misjoinder of parties defendant. It is alleged that the defendants undertook and assumed jointly to construct the building, and the particular part each was to perform is then set out. One was to furnish the steel and one the cement, etc., one to draw the plans, one to superintend the construction, and another to inspect the work. Just in what way the one furnishing the steel could be responsible for the neglect of the others, and vice versa, does not appear. No joint contract is set out. Indeed, the only inference to be drawn from the indictment is that each one contracted individually to perform his particular part of the work.

[2] It is elementary that, before one defendant can be held responsible for the criminal neglect of another, the connection or joint character of the undertaking must clearly appear. In the indictment there is nothing to show such a joint undertaking as would impose upon each of the defendants a personal duty and responsibility in respect of the entire undertaking. It is not sufficient to establish merely the common purpose to construct the theater building, but the undertaking must be such that the negligence of one will be imputable to all the others.

"When certain persons combine to perform certain acts and some of them combine with others engaged in totally different acts, though all may have a

similar general purpose in view, it is error to join them in an indictment." Wilson v. United States, 190 Fed. 427, 436, 111 C. C. A. 231, 240.

From the indictment it appears that it was the defendant Ford who agreed to fabricate and furnish the steel, not the others; it was Fletcher who agreed to do the cement, stone, and brick work, not the others; it was Wallace who agreed to superintend the work, not the others; it was Dowman who was charged with the duty of inspection, not the others; and it was Geare who prepared the plans and specifications, not the others. No contract is set out, and no facts alleged from which joint liability can be inferred.

[3, 4] This brings us to the second branch of the case, the failure of the indictment to state facts sufficient, if true, to establish criminal negligence. The negligence, here sought to be charged against these defendants, occurred while they were engaged in the performance of lawful acts. In such cases the indictment must set out with the utmost clearness the facts upon which criminal negligence is predicated. In this the present indictment is lacking. Indeed, it fails to meet any of the established rules of criminal pleading. An indictment should contain every essential fact necessary to clearly define the crime, and the offense sought to be charged should be set out with sufficient accuracy and completeness to support a judgment, either upon demurrer or conviction. It is true that the indictment charges the defendants collectively with undertaking and assuming to construct and erect the building, and to plan, design, fabricate, and furnish materials therefor, and that in so doing they unlawfully, feloniously, and carelessly failed and neglected to perform their separate assumptions and obligations in a careful and skillful manner. But these are merely conclusions of the pleader. Nowhere does it appear in what particular the cement, or brick, or steel work was defective; nor does it appear in what respect the plans and specifications and superintendence or inspection of the work contributed to the accident.

[5] The reason for the requirement that all the material facts and circumstances, essential to a clear definition of the offense, must appear in the indictment, "is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances." United States v. Cruikshank, 92 U. S. 542, 558 (23 L. Ed. 588).

The case at bar, however, is so completely disposed of by this court in Ainsworth et al. v. United States, 1 App. D. C. 518, that the able opinion of Chief Justice Alvey may be adopted as in every particular decisive of this case.

The judgment is affirmed.