**UNITED STATES v. INTERSTATE PROPERTIES, Inc., et al.**
No. 8945.

United States Court of Appeals
District of Columbia.
Argued Dec. 10, 1945.
Decided Feb. 18, 1946.

See also 80 U.S.App.D.C. 244, 153 F.2d 465.

Mr. Ray L. Jenkins, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Charles B.

Murray, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellant. Mr. Bernard Margolius, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellant.

Mr. Edmund D. Campbell, of Washington, D. C., for appellee Interstate Properties, Inc. Mr. Hugh H. Obear, of Washington, D. C., also entered an appearance for appellee Interstate Properties, Inc.

Mr. John H. Burnett, of Washington, D. C., for appellee Thomas B. Lawler.

Mr. Jacob W. Block, appellee, pro se.

Before GRONER, Chief Justice, and EDGERTON and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

This appeal by the United States challenges the correctness of the action of the District Court of the United States for the District of Columbia in sustaining a demurrer to an indictment which charged three defendants with manslaughter. The accused were Interstate Properties, Inc., a corporation, Thomas B. Lawler, vice president of Interstate Properties, Inc., and "engaged actively in the management of its affairs," and Jacob W. Block.

The indictment is lengthy, but the allegations of its paragraphs, which we number for convenience, may be summarized as follows:

1. On and after October 1, 1940, the corporation owned a four-story brick building in the District of Columbia. It "did then and there lease said property" to Jacob W. Block for use as a rooming house. With the knowledge and consent of the corporation and its vice president, Lawler, Block sublet the premises to roomers and "did use, rent, control, operate, supervise, and manage said premises" as a rooming house, and collected rent from his tenants.

2. From October 1, 1940, until April 24, 1944, the three defendants, "jointly and severally, did use, keep, maintain, manage, operate, control, and supervise" the premises as a rooming house; and by so doing "did have and assume towards said premises, tenants and occupants of the said premises, a legal duty to use reasonable care to keep and maintain said premises in a condition reasonably safe and appropriate for the use, comfort and safety" of the roomers.

3. From October 1, 1940, until April 24, 1944, the three defendants, jointly and severally, were under a duty and obligation to the roomers "to observe and comply with all orders, rules, regulations, and ordinances duly and lawfully enacted and promulgated, relating to the use, occupancy and safety of said building, and for the protection and safety" of the roomers, particularly "the Building Code and the Elevated Code" of the District of Columbia.

4. During the same period, the three defendants, jointly and severally, unlawfully permitted on the premises a dumbwaiter, shaft and hoistway, four feet square, extending from the basement to the roof. The shaft was made of lumber. The three defendants, jointly and severally, permitted the shaft to be used as a receptacle for trash. Under the law and regulations, the dumb-waiter and the shaft were required to be of fire-resistive construction, but through the unlawful negligence and carelessness of the three defendants, the same were not of fire-resistive construction but of inflammable material.

5. The law required that there be an adequate fire escape on the front part of the building, but the three defendants, jointly and severally, failed to provide such fire escape.

6. The three defendants, jointly and severally, and unlawfully, failed to provide adequate protection against fire for the safety of one Audrey M. McNeely; failed to cause the dumb-waiter and shaft to be of fire-resistive construction; permitted the shaft to be used as a receptacle for paper and trash; and failed to provide necessary fire escapes. By reason of these actions of the three defendants a fire started in the dumb-waiter and shaft on April 23, 1944, which burned the part of the building occupied by Audrey M. McNeeley, at which time she received burns of which she died on April 28, 1944.

A joint indictment may be found where the same evidence as to the act which constitutes the crime applies to all the persons indicted, and several persons may be indicted jointly for offenses arising wholly out of the same joint act.[1]

---

[1] Commonwealth v. Elwell, 2 Metc., Mass., 190, 35 Am.Dec. 398; Story v. United States, 57 App.D.C. 3, 16 F.2d 342, 53 A.L.R. 246; 27 Am.Jur., Indictments and Informations, § 123.

█ Initially, this indictment charges the violation by the defendants of their alleged joint duty to use reasonable care to maintain the premises in a reasonably safe condition; but when it begins to particularize as to specific acts of negligence, the indictment says three things: (1) That the defendants negligently failed to have a dumb-waiter shaft constructed of fire-resistive material; (2) that they negligently failed to protect the subtenants from their own folly when they failed to forbid the use of the shaft as a receptable for waste; and (3) that they negligently failed to provide a front fire escape.

When these specifications are examined in regard to common law obligations, it is seen immediately that the alleged duties were not imposed upon the defendants jointly. If it was unsafe to provide a dumb-waiter shaft made of wood, the fault was Interstate's alone, because that would amount to negligent construction for which the landlord is responsible.[2] If it was criminal negligence not to prevent the roomers from filling the wooden shaft with trash, that negligence was Block's only, because he had sole charge of the premises and he alone was operating the rooming house. If it was anybody's duty at common law to provide a front fire escape, it was Block's duty, for the reason that the absence of a front fire escape is not a structural fault.

So it is seen that the acts of negligence charged were not violations of common law duties jointly owed by the defendants and, consequently, when weighed only in the common law balance, there was a misjoinder of defendants, exactly as in the Ainsworth and Geare cases.[3]

█ What duties were imposed by statute or regulation? There is no statute which forbids the use of wood in the construction of a dumb-waiter shaft, or which forbids the use of such a shaft as a waste basket, or which requires a front fire escape on a building such as that involved here. The indictment does not sufficiently plead the existence of applicable regulations requiring the use of fire-resistive material in dumb-waiter shafts and the installation of front fire escapes. The allegations charging violations of the Elevator Regulations should point out with particularity what regulations were violated, and should plead facts concerning the physical situation to show that the regulations relied on were correctly applicable to the situation. If a regulation is pleaded which requires notice from a District official to the person who owns or controls the building that a specified condition must be remedied within a certain period of time, facts should be stated concerning the giving of such notice.[4] It is not enough to say, as this indictment does, that findings and directives "were made known to the said defendants." The nature of the findings and directives, and when and how they were made known to the defendants, should be made to appear.

█ Although the indictment charges, by intendment at least, that a front fire escape was required and was not furnished, it is not pointed out in the true bill that the absence of a front fire escape caused or contributed to the death of Audrey M. McNeeley. The extent of the allegation is that by reason of the failure of the three defendants to provide a shaft of fire-resistive material and a front fire escape, and by reason of their act in permitting the shaftway to be used as a trash receptacle, "a fire, on or about April 23, 1944, did start and burn * * *." This falls short of charging that the absence of a fire escape contributed to the death; it simply says that the absence of a fire escape, among other things, caused a fire to start and burn. This is patently impossible and obviously the allegation is the result of inadvertence.

█ The misjoinder of defendants, as far as the common law is concerned, and the vagueness and uncertainty of the indictment concerning statutory or regulatory requirements, made the indictment bad on demurrer.

Since we have reached the conclusion, for the reasons given, that the lower court acted properly in sustaining the demurrer to the indictment, we express no opinion as to the question of whether a corporation can be guilty of manslaughter.

Affirmed.

[2] Waterhouse v. Joseph Schlitz Brewing Co., 12 S.D. 397, 81 N.W. 725, 48 L.R.A. 157.

[3] Ainsworth v. United States, 1 App.D.C. 518, and United States v. Geare, 54 App.D.C. 30, 293 F. 997.

[4] Moore's Victoria Theater Co. v. District of Columbia, 55 App.D.C. 46, 299 F. 923.