**SIMCIC v. UNITED STATES.**

**MICIOTTO v. UNITED STATES.**

Nos. 1136, 1137.

Municipal Court of Appeals
District of Columbia.

Argued Nov. 19, 1951.

Decided Jan. 11, 1952.

R. Sidney Johnson, Washington, D. C., for appellant, Simcic.

Harry M. Rubin, Jr., Washington, D. C., (Nicholas J. Chase, Washington, D. C., on the brief), for appellant, Miciotto.

William E. Kirk, Jr., Asst. U. S. Atty., Washington, D. C., Charles M. Irelan, U. S. Atty. (Joseph M. Howard and Emory W. Reisinger, II, Asst. U. S. Attys., all of Washington, D. C., on the brief), for appellee, United States.

Before CAYTON, Chief Judge, HOOD, Associate Judge, and SCOTT, Associate Judge of the Municipal Court, sitting by designation.[1]

CAYTON, Chief Judge.

This was a prosecution under our Negligent Homicide Statute, Code 1940, § 40-606,[2] and grew out of a collision at 20th

---

1. Code 1940, Supp. VII, § 11-771.
2. "Any person who, by the operation of any vehicle at an immoderate rate of speed or in a careless, reckless, or negligent manner, but not wilfully or wantonly, shall cause the death of another, shall be guilty of a misdemeanor * * *."

and K Streets, N. W. at 1:30 in the morning when the lights were out and the intersection uncontrolled. Charged as defendants were Joseph M. Simcic, who was operating a bus south on 20th Street, and Alexander R. Miciotto, who was operating a private automobile east on K Street. The two vehicles collided at the intersection and one or both struck the third car, which was going north on 20th Street, with such force that the driver, Heston Simon, was thrown from it and killed. The information charged that the defendants "did then and there operate a certain motor vehicle, to wit: an automobile and bus at an immoderate rate of speed and in such a reckless, careless and negligent manner as to cause and did cause the death of one Heston Simon against the form of the statute. * * *" Under that information the two defendants were tried together and both were found guilty by a jury. Both have appealed their convictions.

Appellants claim that it was improper to join them in the information and improper to try them together. The question of joinder is governed by Rule 5(a) of the Criminal Division of the Municipal Court which provides: "Two or more defendants may be charged in the information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Appellant Miciotto says the defendants did not participate "in the same act or transaction * * constituting an offense or offenses," and also that the information did not allege that they did so. He also argues that the acts of immoderate speed, negligence, carelessness or recklessness ascribed to one defendant cannot be the same as those ascribed to the other. Appellant Simcic argues that Rule 5 requires some concerted action or a joint legal duty or undertaking between the two defendants. He says there was no such concerted action in this case.

Both appellants rely on United States v. Geare, 1923, 54 App.D.C. 30, 293 F. 997, a prosecution for involuntary manslaughter growing out of the death of a patron in a theater on whom the roof collapsed. There five defendants were charged with having caused the death: the architect, the steel fabricator, the cement contractor, the construction superintendent, and the work inspector. It was held that before one defendant can be held responsible for the criminal neglect of another, the connection or joint character of the undertaking must clearly appear and that since the negligence charged occurred while the defendants were engaged in the performance of lawful acts, the allegations that they unlawfully, feloniously, and carelessly failed to perform their separate obligations in a careful manner were mere conclusions of the pleader. No facts being alleged from which joint liability could be inferred, the court ruled that no joint undertaking was shown.

Also relied on by appellants is United States v. Interstate Properties, 80 U.S. App.D.C. 392, 153 F.2d 469, 471. There three defendants were charged with manslaughter in the improper construction and maintenance of a dumb-waiter shaft resulting in a fatal fire. It was held that there was no sufficient allegation of violation of a common law duty jointly owed by the defendants "and, consequently, when weighed only in the common law balance, there was a misjoinder of defendants * * *." Citing Ainsworth v. United States, 1 App. D.C. 518, and United States v. Geare, 54 App.D.C. 30, 293 F. 997.[3] It is to be noted that neither of the cases just named were decided on the basis of any statute or rule of court concerning joinder; furthermore both cases are easily distinguished on the facts from the case at bar.

■ An explicit rule of the Municipal Court governs this case. That rule was adopted pursuant to express Congressional authority and has the force of law.[4] Since

---

3. To the same effect are McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed. 355; Sasser v. United States, 5 Cir., 29 F.2d 76; Coco v. United States, 8 Cir., 289 F. 33.

4. Wise v. Herzog, 72 App.D.C. 335, 114 F.2d 486; District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 163 F.2d 833.

the Municipal Court Rule is substantially the same as Federal Criminal Rule 8, 18 U.S.C.A. (also adopted pursuant to Congressional authority), we may with profit consider the background of the Federal Rule and what was said about it by the official Advisory Committee appointed by the Supreme Court. In its report[5] the Committee noted that in the absence of any general statute providing for joinder of defendants, joinder was generally permitted if the defendants cooperated in the offense or had breached a legal duty. Specifically the committee stated that at the time of drafting the Rules an indictment of two defendants in one count was permitted by all authority if the defendants acted jointly, but "not permitted by most authority, if A and B participated in the offense without cooperation." The Committee interpreted the Rules as not only incorporating present general practice but going somewhat beyond it to permit joinder in such cases as United States v. Geare, supra; United States v. Dietrich, C.C.D.Neb., 126 F. 664; State v. Blackley, 191 Wash. 23, 70 P.2d 799, 801.

In State v. Blackley, just cited, the facts are strikingly similar to those before us on this appeal. There the information alleged that one Bicknell had driven an automobile stage partially off the highway without leaving sufficient clearance on the highway, and that Blackley, driving while intoxicated and in a reckless manner, struck the end of the stage, veered to the left, and collided with the automobile of a third person, G. M. Caylor, killing him. Bicknell and Blackley were charged in the same information with manslaughter. On motion the information was quashed and the State appealed. The Supreme Court of Washington reversed and said:

"* * * The rule is that where but one crime is charged in the indictment or information, all who participate in its consummation may be joined as defendants in the same information, even though their

contributions to the result may be by different methods or acts. * * *

"In the case at bar, there is but one crime charged—the killing of G. M. Caylor by the negligent acts of the defendants. Notwithstanding the defendants are not charged with the same acts of negligence, they are properly joined, since, under the facts alleged, the negligent acts of each contributed to the consummation of the crime."

We find no decision presently applicable which would bar a joinder under the facts of this case. The allegation was in the language of the statute that the two defendants operated their vehicles "at an immoderate rate of speed and in such a reckless, careless and negligent manner as to cause and did cause the death of one Heston Simon against the form of the statute. * * *" This language, we think it clear, brought the case under the provision of Rule 5 and sufficiently alleged that in the operation of their vehicles, defendants had participated in the same act or transaction or in the same series of acts or transactions constituting the offense charged. This is the general effect of the decisions governing the present practice under Federal Criminal Rules. Cataneo v. United States, 4 Cir., 167 F.2d 820; Scheve v. United States, 87 U.S.App.D.C. 289, 184 F.2d 695; Malatkofski v. United States, 1 Cir., 179 F.2d 905; United States v. Needleman, D.C., 6 F.R.D. 205.

Our decision in Hunt v. District of Columbia, D.C.Mun.App., 47 A.2d 783, 784, is of no help to defendants. There three defendants were charged with vagrancy for frequenting and being employed in a house of ill fame. We ruled that under 18 U.S. C.A. § 557 and Municipal Court Criminal Rule 5, it was not proper to consolidate the trials of defendants who had engaged separately and without concert of purpose in independent crimes of the same nature. We said, "Vagrancy is a status or condi-

5. Federal Rules of Criminal Procedure, Preliminary Draft with Notes and Forms, Prepared by the Advisory Committee on Rules of Criminal Procedure Appointed by the Supreme Court of the United States, Following Rule 9, Note to Subdivision (b). (Rule 9 at the time of second draft was made Rule 8. Notes were the same.) U. S. Government Printing Office, Washington: 1943.

tion and the statute punishes one for being a certain kind of person, not for the doing of an overt act", and that it is not a crime that can be committed jointly or in concert because in essence it is a personal condition arrived at by a mode of living. We ruled that though the acts were similar, they were not the same act or the same series of acts. Affirming our decision, the United States Court of Appeals said, giving effect to Rule 5, that joinder depends upon allegations that the defendants participated in the "*same* act or transaction or in the *same* series of acts or transactions * * *." District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 161, 163 F.2d 833, 835. We rule that under the rule in question joinder of the defendants in this case was not improper.

We turn next to the claim that there should have been separate trials of the two defendants. We know of no decision which would require us to rule that a severance should have been granted as a matter of right. On the contrary, the rule is that defendants jointly charged should be tried together and that granting separate trials is a matter of discretion. Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225. It is true that the Government had to prove the individual acts of the two defendants leading up to the collision. It is also true that the two defenses were separate and distinct and even antagonistic one to the other. It may also be true that each defendant's chances of acquittal may have been better if he had a separate trial. But that by no means establishes their right to a severance. Appellant Miciotto says that because the defenses were antagonistic to each other prejudice should be assumed. But as we said in Prezzi v. United States, D.C.Mun.App., 62 A.2d 196, 198, "if appellant drove at an immoderate rate of speed and such act was a proximate or direct cause of the accident, appellant is not relieved from responsibility because the negligence of another concurred in producing the result." In the light of the evidence and the jury instructions which we shall discuss later, we are of the opinion that this was a proper case

in which to order a joint trial. Supporting our view of the matter are Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L. Ed. 300; Hall v. United States, 83 U.S. App.D.C. 166, 168 F.2d 161, 4 A.L.R.2d 1193, certiorari denied 334 U.S. 853, 68 S. Ct. 1509, 92 L.Ed. 1775, rehearing denied 335 U.S. 839, 69 S.Ct. 9, 93 L.Ed. 391; Dauer v. United States, 10 Cir., 189 F.2d 343.

Additional Contentions of Appellant Miciotto:

Miciotto contends that the case against him "contained such conflicts as to create a reasonable doubt with respect to his guilt." It seems to us that he is really asking us to reweigh the evidence. The point requires no elaborate analysis or discussion. Before the jury there was not only verbal testimony but also demonstrations on a chart, police reports, speed computations, and photographs showing damage to the three vehicles, all of which, taken together, support a verdict that this appellant drove his automobile in violation of the statute and thereby caused or was one of the causes of the fatality out of which the prosecution grew.

He assigns as error the fact that during cross-examination of a police officer (Locke), counsel for co-defendant Simcic elicited from him a statement or "admission" that Simcic had told said officer that Miciotto had been operating his automobile "at a terrific rate of speed." As to this we note that initially the question was asked and the answer given, with no objection by Miciotto. It is true that afterwards the matter was gone into at greater length than seems necessary or strictly proper. But since Simcic himself later in the trial testified substantially to the same effect, we cannot see how Miciotto was prejudiced by the statement made to the officer. Moreover, any harmful effect of such statement was effectively neutralized when the judge told the jury during his charge, carefully and explicitly, that any statement made by one defendant out of the presence of the other was not binding upon such absent defendant, and

had been admitted "only and solely as against the defendant who made the statements."

■ Counsel for Miciotto criticizes that part of the charge to the jury which contained a Government prayer (No. 10) as follows: "And you are instructed further that there may be more than one cause of a collision between vehicles. Thus, if you find beyond a reasonable doubt that the defendant Joseph Simcic operated his bus in a negligent manner or in a careless manner or in a reckless manner or at an immoderate rate of speed, and that such operation by the defendant Joseph Simcic was the cause of the collision, and that the defendant Alexander Miciotto also operated his automobile in a negligent manner or in a careless manner or in a reckless manner or at an immoderate rate of speed, and that such operation by defendant Alexander Miciotto was also a cause of the collision of the vehicles, and thus these acts of both defendants resulted in the collision of the vehicles, and that this collision was the proximate cause of death of Heston Simon, then it's your duty under the law to find both defendants guilty as charged."

We are asked to say that this instruction was confusing and did not properly explain the theory of "causation" involved in this type of prosecution. The point is not well taken. We think the quoted language told the jury plainly enough that to convict both defendants they would have to find beyond a reasonable doubt that both had driven their respective vehicles in violation of the statute and that such acts of the two defendants had combined to cause the collision which resulted in the death of Heston Simon. We think it is no more than a play on words to argue as Miciotto does that the defendants must be shown to have caused the death, not merely the collision. At no stage of the trial was it ever questioned that Simon came to his death as an immediate result of the three-way collision between the vehicles operated by Simcic, Miciotto and himself. Hence if the jury believed that the two defendants by driving in violation of the statute caused the collision, there would be no escaping

the conclusion that they thereby caused Simon's death. We add the observation that several times in his charge the judge was careful to explain the meaning of proximate cause not only generally but also with separate and specific reference to each of the defendants. His language was in general conformity with our opinion in Prezzi v. United States, D.C.Mun.App., 62 A.2d 196.

■ Miciotto next assigns as error the failure to give an instruction requested by his co-defendant Simcic (No. 8) as to the standard of care and prudence required of Simcic if the jury found that without fault on his part he was suddenly confronted with unexpected and imminent danger. This is a familiar instruction and should always be granted when the evidence justifies it. Indeed the trial judge said he would grant it except for the first or introductory sentence. Seemingly it was overlooked or at any rate omitted during the charge itself. But it is at least doubtful whether Miciotto was entitled to such an instruction, for his own testimony was that, "First thing I knew, I heard a tremendous noise to my left," and then he was hit by the bus. Based on this as well as other testimony in the case we think the theory of imminent or unexpected danger was not applicable to Miciotto. We rule that his rights were fully protected by the instructions on general standards of care.

■■ Error is also assigned with reference to the refusal of Miciotto's prayer No. 13, which contained the following sentence: "To justify a finding of guilt you must find beyond a reasonable doubt not only that the defendant drove his vehicle at an immoderate rate of speed or negligently, but also that such immoderate rate of speed or such negligence directly and proximately caused the death of Heston Simon." This was an erroneous and incomplete statement and the prayer was properly refused. It omitted an essential phase of the statute which makes it a crime to drive "carelessly and recklessly." Since the same subject matter was covered quite fully in other parts of the charge there was no duty on the part of the judge to

amend or enlarge this faulty and incomplete instruction. Jackson v. United States, 48 App.D.C. 272; George v. United States, 75 U.S.App.D.C. 197, 125 F.2d 559.

Another instruction offered by Miciotto invoked the theory of "unavoidable or inevitable accident" and stated a requirement that both negligence and proximate cause must exist as a foundation for a guilty verdict. There was no error in denying this instruction since the judge in his charge carefully and accurately covered the applicable standards of care as well as proximate cause. He also made it plain that no presumption arose from the mere happening of the collision and that no inference was to be drawn therefrom against either defendant; but that on the contrary the presumption of innocence attended both defendants until overcome by evidence establishing their guilt beyond a reasonable doubt.

We now consider the final contention that in part of his charge the judge told the jury that the defense was a "general denial" and "omitted the element of causation, i. e., that Miciotto also denied that any act of his was a proximate cause of the death." From this it is argued that "the sole inference for the jury was that, as a matter of law, they did not have to consider whether or not any act of Miciotto proximately caused the death of Heston Simon because that fact was not in issue, i. e., that either Miciotto did *not* deny that he proximately caused the death or that as a matter of law, he did cause the death if he was negligent." We agree that in every criminal case the court must define for the jury the elements of the offenses charged, and we have so held. Davenport v. United States, D.C.Mun. App., 60 A.2d 226, quoting from Williams v. United States, 76 U.S.App.D.C. 299, 131 F.2d 21; Peters v. District of Columbia, D.C.Mun.App., 84 A.2d 115. And we agree that in a prosecution of this kind "causation" should be explained to the jury. The record shows that such was done here. At the outset of his instructions the judge carefully told the jury that the charge was that the defendants "did then and there operate a bus and a passenger automobile at an immoderate rate of speed and in such a careless, reckless, and negligent manner so as to cause and did cause the death of one Heston Simon." At least twice he wove similar instructions into other parts of the charge, each time stating in plain words, with particular reference to Miciotto, that in order to convict him the jury must first find that in the operation of his automobile he had violated the law in one of the particulars charged and that such operation was a proximate cause of the death. Having already discussed this matter at some length earlier in the opinion, we see no need to labor it now. The charge as a whole meets every reasonable test to which it may be subjected.

Affirmed.