**UNITED STATES of America**

v.

**Charles WILSON, Jr., Appellant.**

**UNITED STATES of America**

v.

**Charles ROBINSON, Appellant.**

**Nos. 22721, 22722.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 22, 1970.

Decided June 11, 1970.

As Modified June 15, 1970.

Mr. Julius Schlezinger, Washington, D. C., with whom Mr. Mario Escudero, Washington, D. C. (both appointed by this court) was on the brief, for appellant in No. 22,721.

Mr. James M. Johnstone, Washington, D. C., with whom Mr. John M. Greacen, Washington, D. C. (both appointed by this court) was on the brief, for appellant in No. 22,722.

Mr. Warren R. King, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee. Messrs. David G. Bress, U. S. Atty., at the time the record was filed, and Roger E. Zuckerman, Asst. U. S. Atty., also entered appearances for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

A Peoples Drug Store in Washington was held up and robbed by three men a few minutes before the 10 P.M. closing time. Wilson, Robinson and Winslow were later indicted and convicted of the offenses involved and they appeal.

Shortly after the oral argument in this court, Winslow moved to dismiss his appeal and we granted the motion. The remaining appellants attack the procedure by which the indictment was returned and contend they were prejudiced by a refusal of the trial court to grant them separate trials. Since we fail to find any resulting prejudice we affirm their convictions.

## I

The attack upon the indictment is made for the first time on appeal. It consists, in effect, of a charge that the indictment was not that of a grand jury as required by the Fifth Amendment.[1] Under the longtime procedure that was followed in the office of the United States Attorney a "presentment" was first returned by the grand jury only charging the three defendants with violations of the statutes by name.[2] Thereafter the specific indictment was drafted by the United States Attorney, signed by the grand jury foreman and filed "in open court" without submitting it to the grand jury for approval.

 A challenge by a defendant, based upon alleged defects in the institution of the prosecution or in the indictment, is required under the Federal Rules of Criminal Procedure to be raised by motion before trial.[3] Since the attack upon the indictment was not presented until the appeal to this court, we dispose of it on the ground that it was not timely brought. We also rely

upon our decisions in Gaither v. United States, 134 U.S.App.D.C. 154, 174, 413 F.2d 1061, 1081 (1969). In *Gaither* we finally decided that indictments brought before April 8, 1969 would not be subject to challenge for the procedural defect resulting from the "presentment" practice. Accordingly, since the indictment in this case was returned, and the appellants were tried and sentenced in 1968, all before our decision in *Gaither*, appellants have not brought themselves within the class of those eligible to challenge the indictment. It is proper to provide that a decision, such as *Gaither*, shall not be applied retroactively. Stovall v. Denno, 388 U.S. 293, 296–301, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. New Jersey, 384 U.S. 719, 726–727, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 409–410, 86 S.Ct. 459, 15 L.Ed. 453 (1966); Linkletter v. Walker, 381 U.S. 618, 622–629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

## II

Appellants' second contention is that error was committed by the trial court (a) in not granting a motion for a separate trial made by Robinson in advance of trial, and (b) in not granting a severance because of alleged prejudice to both Wilson and Robinson which each contends developed at a certain stage in the trial.

1. "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *." Fifth Amendment, U.S.Const. The Fifth Amendment does recognize a "presentment."

2. Robbery, assault with a dangerous weapon, assault on member of police force with dangerous weapon, unauthorized use of vehicle, Charles Robinson carrying dangerous weapon.

3. Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in

the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding. Fed.R.Crim.P. 12(b) (2).

The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter. Fed.R.Crim.P. 12(b) (3).

The material facts relevant to the severance questions follow. On November 30, 1967, a Peoples Drug Store at 2066 Rhode Island Avenue, N. E. was held up and robbed by three armed men. The employees and a customer were forced to lie down on the floor and the robbers took money, drugs (some narcotics) and a few blank travellers checks. The robbers (according to testimony of one of the defendants) attempted to flee in what later developed was a stolen automobile, the car was chased at dangerous speeds by the police who responded to radio messages, and the occupants were apprehended near the automobile when it skidded and crashed. Government testimony identified the three defendants as the occupants of the car although some were chased a short distance before they were arrested. Robinson was apprehended and arrested in close proximity to the car.

Wilson and Robinson both took the witness stand in their own defense.[4] Wilson testified he was abducted outside the entrance to the drug store by "two men"[5] who forced him into the back seat of the automobile while they fled. Robinson testified he just happened to be walking by the scene of the crash, slipped to the ground trying to avoid being hit by the car as it skidded and was apprehended as he lay on the ground beside the car. In testifying in their own behalf both Wilson and Robinson described their activities prior to their arrest in considerable detail. We omit mention of their testimony as to these activities except as they are related to Louie's Billiard Parlor around which testimony appellants now base their claim of prejudicial joinder.

Wilson testified that on the night in question he had left his home about 7 P.M., gone to Louie's where he expected to meet a friend (who never showed up), he had been there many times previously, he arrived there about 7:30 P.M.,

the pool hall had six or eight pool tables, a few people were in there, he did not recall talking to anyone while he was in there, he did not know or recognize any of the people who were around there at the time, he played pool by himself until about 9:25 or 9:30 (also variously stated as 9:30 or 9:35 and about 9:29), then left to catch a bus, caught it and later got off to go to the Peoples Drug Store and when he started to enter such store he was met by the two robbers. They told him to accompany them in their getaway car. "So I just did what they said." He was not sure that he saw any weapons or guns. "I felt something in my back. * * * It probably was [a weapon or gun]."

Robinson testified that he had been in Louie's Billiard Parlor for twenty minutes that evening, he had been there before; he played pool that evening by himself for fifteen minutes, he did not see Wilson there; did not remember seeing him there, he could not "rightly tell" the time he was there, he called his sister "around 9:30 [from Louie's], so it had to be around nine or ten," he "left the pool hall anywhere between a quarter to ten or twenty five minutes to ten—somewhere in between there, maybe a quarter to ten," started walking up Rhode Island Avenue and when he reached First Street and Rhode Island Avenue a car turned the corner and in order to try to avoid being hit, he slipped and fell on the ground and in this position he was arrested for robbery of the drug store. The car he referred to was the one that Government testimony described as being driven by Winslow and also as carrying Wilson and Robinson.

In closing argument the attorney for the United States commented on the Louie's Billiard Hall testimony of Wilson and Robinson as follows:

> Then, members of the jury, there is a coincidence that just comes to my mind. When explaining his activ-

---

4. As did Winslow. ▪▪▪

5. It was uncontradicted that three men had been in the drug store.

ities that night, Wilson says that he winds up, that he was at a pool room, Louie's on T Street, and he left there around 9:30 or thereabouts, and the coincidence, members of the jury, at that same pool room is Robinson. And Robinson is one of the individuals who is also arrested at that particular time, arrested by Officer Cook. What does counsel for Robinson say, members of the jury. He says, lo and behold, it was a desperate act upon the part of Cook. He had to arrest a third person and, therefore, he arrested this individual.

With the record in this state, appellant Robinson asserts that the trial court committed reversible error in failing to grant his pretrial motion for severance. Both appellants also contend error was committed by the trial court in failing to declare a mistrial and grant separate trials during the progress of the trial when it allegedly became apparent that each was being prejudiced by the testimony of the other with respect to their presence at Louie's on the evening in question.

### A. The Pretrial Motion

 We consider Robinson's pretrial motion first. The three alleged participants in these offenses were jointly indicted for the crimes of robbery (D.C. Code § 22–2901), assault with a dangerous weapon (D.C. Code § 22–502), as-

sault on a member of the police force (D.C.Code § 22–505(a)), unauthorized use of a vehicle (D.C.Code § 22–2204) and carrying a dangerous weapon (D.C. Code § 22–3204).

It is obvious from a mere reading of Rule 8 of the Federal Rules of Criminal Procedure [6] that given the facts here stated, and which the jury later found to be true in every respect, that it is proper to join both the offenses and the defendants in a joint indictment. The offenses are based on two or more connected acts, constituting part of a common scheme and plan and the appellants are alleged to have participated in the same series of acts constituting the offenses. Such being the case the defendants may be joined in one or more counts together or separately and all the defendants need not be charged in each count. The joinder is also strengthened by the fact that each of the appellants aided and abetted those offenses charged against the other appellants.[7] The circumstances of the case thus met the basic requirements of the Rule and it was proper for the grand jury to join the defendants and the offenses in the indictment.

 Robinson promptly moved under Rule 14 [8] for relief from what he claimed was prejudicial joinder. He alleged that "should Wilson or Winslow testify, such testimony will probably place defendant at the scene of the al-

6. *Joinder of Offenses.* Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
 *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. Fed. R.Crim.P. 8(a), (b).

7. In prosecutions for any criminal offenses all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be. D.C.Code § 22–105 (1967).

8. If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment of information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.
 * * * Fed.R.Crim.P. 14.

leged crime [at the drug store] * * *[9] there is a high probability that defendant Wilson or Winslow will shift the blame to defendant Robinson, thereby making Robinson's defense a nullity." His severance motion was thus based upon the prediction that his co-indictees would offer their exculpatory statements which would tend to shift blame to him. *United States v. Kelly,* 349 F.2d 720, 758–759 (2d Cir. 1965). After a full hearing a district judge denied the motion, and we fail to see any error in that decision. The circumstances presented a proper case for the joinder of parties and offenses and the movant did not present any actual substantiation for his allegation that there was a "high probability" that prejudice from the source he anticipated would result from the joinder. Something more than mere assertion and speculation is required to support such a motion. It is, of course, not material to our consideration of the district court's decision on the motion that prejudice of the character allegedly feared did *not* develop at the trial, but it is helpful as confirming the soundness of the initial decision.

### B. *The claim that during trial prejudice arose from the joint trial of offenses and defendants Wilson and Robinson*

Both appellants next contend that during the trial, it developed from the testimony they gave with respect to their presence earlier in the evening in Louie's Billiard Parlor, that they were each prejudiced by the testimony of the other and that the court committed plain error [10] in failing *sua sponte* to declare a mistrial and grant appellants separate trials or take other proper action to cure the prejudice. The alleged prejudice

upon which this contention is grounded differs from the alleged prejudice Robinson asserted as the basis for his pretrial motion. Both appellants now claim that the testimony given by them with respect to their presence at Louie's Billiard Parlor was "conflicting and irreconcilable" and clearly created the danger that the jury would "infer that this conflict alone demonstrates that both are guilty." *See* Rhone v. United States, 125 U.S.App.D.C. 47, 48, 365 F.2d 980, 981 (1966). Robinson specifically contends he was prejudiced by Wilson's alibi testimony that Wilson had played pool at Louie's until 9:30 P.M. but did not recognize any of the several people there at the time, particularly because Robinson's own testimony that he was in Louie's "until 9:30 P.M." [11] would not be given a fair evaluation by the jury because Wilson's testimony and presence as a defendant gave the Government the opportunity to establish on cross-examination of Robinson that he had not seen Wilson in Louie's. Robinson characterizes the transcript as presenting "conflicting alibi testimony." He also contends that he was prejudiced by the doubt cast on his Louie's Billiard Parlor testimony by the cross-examination of Wilson and the Government's rebuttal testimony to Wilson's testimony, which he asserts discredited some of the testimony Wilson gave as to his acts after he left Louie's. Robinson concludes that some of this must have "rubbed off" on him (Robinson) to his prejudice and that some of the testimony by Wilson is allegedly "self-defeating testimony" that may have discredited Robinson's "strong alibi defense."

A trial judge has a continuing duty at all stages of a trial where persons or offenses are being jointly tried to be alert and take appropriate

---

9. According to Robinson's testimony at trial he was never in the drug store or the automobile but was merely standing on the corner when the car came by driven by Winslow.

10. Plain errors or defects affecting substantial rights may be noticed although

they were not brought to the attention of the court. Fed.R.Crim.P. 52(b).

11. His actual testimony was not this clear cut. See earlier description of Robinson's testimony with respect to the variable times he gave for his presence at Louie's Billiard Parlor.

action to counter any unfair prejudice that may arise. Fed.R.Crim.P. 14; Schaffer v. United States, 362 U.S. 511, 516, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). In some cases the Government may be forced to make an election and in others a separate trial of individuals or offenses may be the required remedy. Each case presents a different problem. A motion for severance is addressed to the sound discretion of the trial court, and his exercise of discretion will be sustained on appeal unless clearly abusive.[12] Opper v. United States, 348 U.S. 84, 94–95, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Brown v. United States, 126 U.S.App. D.C. 134, 139, 375 F.2d 310, 315 (1966). Here neither appellant sought severance during the progress of the trial. A failure (or refusal) of defense counsel to move for severance during trial is frequently indicative that they did not consider from their vantage point in the trial of the case that their clients were being prejudiced. We consider that such might well have been the situation here since counsel defended their clients in a very able manner. The motivation to claim that prejudice occurred during the trial is much stronger after conviction when the accused may view it as the only hope to secure an acquittal, than during trial when conviction was not assured and there was not the same degree of certainty that he would be bettering his chances if afforded a separate trial. Neither of these consequences, however, should affect our judgment as to whether appellants' rights were substantially prejudiced by the failure of the judge during trial to note the alleged prejudice and order separate trials or take other remedial action.

The answer to this issue here turns upon an analysis of the testimony appellants gave with respect to their presence at Louie's. They contend their pool hall testimony presented "conflicting and irreconcilable defenses" and that there was the danger that the jury would "infer that the conflict alone demonstrates that both are guilty." Robinson also contends he was further prejudiced when Wilson's alibi testimony was partially contradicted. We disagree.

Analysis of the Louie's Billiard Parlor testimony at best shows only a minor conflict and otherwise no conflict at all. Recognizing that both appellants to some extent gave approximate times for their presence there, the testimony does not state assuredly that appellants were there at the same time. They might just have missed each other.[13] And, even if their testimony is construed as placing them in the pool hall for a short period at the same time, the fact that neither appellant recalled seeing the other there is somewhat corroborative of one of the principal points in the defense of each that *neither knew the other until they were arrested at the same time* at the scene of the automobile crash. There is nothing unusual about a person being in a pool hall for a short period and some months later not recalling whether he saw a person there at that time that he had not previously known. The failure of appellants to initially observe and subsequently recall having seen the other might also be explained, had it been questioned, by the fact that during a portion of the time Robinson was at the back of the pool hall telephoning his mother and his sister.

12. Where, as here, no motion for severance was made during the trial of the case, a motion for new trial on such grounds should certainly have been made if counsel considered that such motion was justified. Fed.R.Crim.P. 33.

13. If the extremes of time testified to by Wilson and Robinson are matched, one result could be: Wilson played pool in Louie's until 9:25 P.M. (Tr. 286). Robinson was there for approximately twenty minutes (Tr. 319) and left at 9:45 (Tr. 331). Thus the failure of each to recall seeing the other in Louie's may be accounted for by the fact that both were not in Louie's at the same time since Robinson may have been entering Louie's at about the time that Wilson left. Also Robinson testified that around 9:30 P.M. he was telephoning his sister from the back of Louie's (Tr. 329). Thus, arguably, it was entirely possible for him to miss seeing a person who was leaving Louie's after playing pool because he was telephoning at the back of the pool hall.

On the claim of prejudice it is also important that the United States Attorney in his jury argument made no comment whatsoever on the failure of appellants to recognize or recall seeing the other, which is the only "conflict" appellants assert on appeal. The only comment of the U.S. Attorney was to that portion of their testimony upon which both *agreed, i. e.,* that they both *had been* in Louie's Billiard Parlor earlier in the evening. He termed this a "coincidence." It thus seems that appellants are now ascribing a larger role to the alleged "conflict" in the pool hall testimony than actually existed at trial. It is easy to see why no counsel for any defendants made a motion for severance during the trial on the basis of the testimony with respect to Louie's Billiard Parlor. We thus find no basis for requiring a severance because of the pool hall testimony.

Robinson raises the additional argument that severance should have been granted because Wilson's alibi testimony was contradicted in one particular on rebuttal. This rebuttal evidence tended to prove that the bus Wilson testified he took to a place nearby the scene of the crash did not run there. This evidence did not completely explode Robinson's alibi. He could have arrived at the place of his arrest substantially in the manner he testified and been mistaken as to the exact route of the buses he rode to reach there. Moreover, this was only one point in a lengthy trial and could hardly have been determinative in the jury's consideration of the evidence with respect to Robinson. While Robinson characterizes his alibi testimony as strong, it was anything but that. The Government's evidence as to his capture was very positive and left little or no room for variation. Wilson and Winslow were apprehended at a substantial distance from the car while they were fleeing, but Officer Cook testified he saw Robinson coming out of the car from the rear seat. He had a tussle with him, observed a gun in his hand, they had a fight, the gun went to the ground and Cook then pulled his revolver and held Robinson until other policemen arrived. Robinson was never out of Cook's view from the moment he observed him in the rear seat. Robinson's gun and the clip were introduced as evidence at the trial. Thus Robinson's alibi testimony was also refuted by Government evidence.

■ Robinson was thus caught practically redhanded a few minutes after the robbery. The car in which he was riding had been stolen.[14] The revolver introduced into evidence was observed by the police officer in Robinson's hand and the driver of the car was apprehended with some of the loot from the drug store robbery on his person. In the face of such strong evidence we see no substantial prejudice to either Robinson or Wilson by the alibi testimony that each gave on his own behalf. Certainly, Robinson's alibi that he just happened to be walking by the street corner at the time he was arrested is not strong. It does not answer the Government's testimony that he came to the scene of his arrest, not walking, but was riding in the robber's car with a gun in his hand. Under such circumstances the danger of prejudice to Robinson by the Government's rebuttal testimony with respect to a portion of Wilson's alibi is too remote and insubstantial to require severance

■ The general rule in federal courts calls for a single trial of persons jointly indicted and that a defendant might have a better chance of acquittal if tried separately does not establish his right to severance. Dykes v. United States, 114 U.S.App.D.C. 189, 190, 313 F.2d 580, 581 (1962), cert. denied, 374 U.S. 837, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963); Lucas v. United States, 70 App. D.C. 92, 93, 104 F.2d 225, 226 (1939). Even partial corroboration of Government testimony by a co-defendant (which does not exist here) is not grounds for

14. The offenses of unauthorized use of a vehicle, carrying a dangerous weapon, assault of member of the police force with a dangerous weapon, as charged against Robinson, were proved by direct eyewitness testimony.

502

a severance. Fields v. United States, 370 F.2d 836, 838 (4th Cir. 1967); United States v. Kahn, 366 F.2d 259, 263 (2d Cir.), cert. denied, 385 U.S. 948, 87 S.Ct. 324, 17 L.Ed.2d 226 (1967); United States v. Houlihan, 332 F.2d 8, 15 (2d Cir.), cert. denied sub nom. Legere v. United States, 379 U.S. 828, 859, 85 S.Ct. 115, 13 L.Ed.2d 61 (1964); United States v. Soto, 256 F.2d 729, 735 (7th Cir. 1958). The authorities cited by appellants do not apply to the facts in this case because they each involve situations where incriminating evidence that was inadmissible against the appellant was admitted against a co-defendant.[15] They each involved a denial of the right to cross-examine witnesses as to the incriminating evidence, which was usually a confession. No such denial of the right of cross-examination existed here with respect to the Government's rebuttal testimony concerning the bus routes.

We accordingly conclude that substantial prejudice has not been shown, that the trial judge did not abuse his discretion in failing to grant separate trials and that on the entire record the appellants received a fair trial.

Affirmed.

---

15. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Flores v. United States, 379 F.2d 905, 910 (5th Cir. 1967); United States v. Bozza, 365 F.2d 206, 215–218 (2d Cir. 1966); United States v. Kelly, 349 F.2d 720, 758–759 (2d Cir. 1965); Barton v. United States, 263 F.2d 894, 898 (5th Cir. 1959); Schaffer v. United States, 221 F.2d 17, 19 (5th Cir. 1955).