**UNITED STATES of America**

**v.**

**John Mack HOPKINS, Appellant.**

**No. 71–1266.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1972.

Decided June 22, 1972.

Rehearing Denied Aug. 30, 1972.

Mr. Paul M. Craig, Jr., Washington, D. C. (appointed by this court), for appellant.

Mr. Richard L. Cys, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and James L. Lyons, Asst. U. S. Attys., were on the brief, for appellee. Mr. Harold H. Titus, Jr., present U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, DANAHER, Senior Circuit Judge, and FRANK A. KAUFMAN,* U. S. District Judge for the District of Maryland.

DANAHER, Senior Circuit Judge:

After a jury trial this appellant and his brother, William W. Hopkins, Jr.,[1] were found guilty on January 14, 1971 of various charges arising from the holdup of the McLachlen National Bank on December 15, 1969. Appellant was sentenced to concurrent terms of 4 to 12 years for entering a bank with intent to commit robbery, 18 U.S.C. § 2113(a); 4 to 12 years for armed robbery, 22 D.C. Code § 2901, § 3202; and 3 to 10 years for assault with a dangerous weapon, 22 D.C.Code § 502. This appeal followed.

Some appreciation of the flavor of the case may be gleaned from appellant's brief where he tells us:

Appellant never denied his presence in the bank at the time of the robbery but maintains that he was not connected and did not participate in the robbery . *He took no part in the robbery itself, carried no weapon, made no threatening gestures and in fact did nothing which tied him to the crime except his presence and his relationship to the other co-defendant who happened to be his brother* and whose defense was mistaken identity.[2]

Appellant otherwise on brief, conceding that he was physically present in the lobby of the bank as the robbery progressed, nevertheless has insisted that he "did not do anything" and that he was "merely standing in the middle of the bank lobby during the robbery." But, when his brother, brandishing a revolver vaulted over the bank counter, tellers activated the bank's automatic cameras which photographed the scene. When the negatives were developed, the appellant was depicted standing before the tellers' windows with his hand in his right-hand pocket so extended as to indicate his possession of a gun.[3] In his other hand he held a bag. Bank tellers and a customer were crouched down but not the appellant.[4] One customer, Mrs. Rodwell, testified that after William Hopkins had snatched some $2,500 from the two cash drawers, she heard this appellant say to William, "That's enough, man. Let's go." Thereupon William followed by the appellant left the bank by a side door.

Without our developing yet other details in this respect, we may add that Mrs. Rodwell before entering the bank had seen the appellant and his brother conversing outside of the bank. The appellant was wearing green trousers and a black three-quarter length fur coat. A bank supervisor, one Nader, found himself confronted by William Hopkins who pointed a gun at him. Nader noticed the appellant some fifteen feet away. To the police Nader described the appellant as being some five feet, three or four inches tall, weighing some 140 pounds, and then wearing bright green trousers and a three-quarter length black coat.

It seems obvious enough that the jury fairly concluded that the two men were

---

* Sitting by designation pursuant to 28 U.S. C. § 292(c) (1970).

1. Neither of the accused testified. William Hopkins has not appealed.

2. Italics in original.

3. Since the appellant was not arrested until some four days later, there was no evidence that he was in fact armed at the time of the robbery.

4. This appellant's pictures appeared in at least ten frames of the photos taken by the bank's cameras and by stipulation Exhibits 3A through 3L were received in evidence. As part of the record before us we have examined these exhibits.

acting in concert, their purpose was to execute a robbery which actually occurred, and that this appellant served as a lookout, even to the point of covering their joint escape.

The evidence must be viewed in the light most favorable to the Government, both as to its truth and as to all legitimate inferences to be drawn therefrom.[5] Here surely a jury question was presented.

Even as we thus dispose of appellant's insistence that he did "nothing," we next turn to yet other points raised by counsel appointed to prosecute this appeal.

# I

██ ██ Appellant has argued that his pre-trial motion for severance should have been granted, but clearly, under Rule 8, Fed.R.Crim.P., a joinder of the offenses was entirely proper, and so both accused were correctly charged in the same indictment which alleged they had participated in the same act or transaction. A ruling[6] denying severance is not to be disturbed on appeal unless clear abuse of the judge's discretion can be shown. United States v. Wilson, 140 U.S.App.D.C. 220, 226, 434 F.2d 494, 500 (1970); Brown v. United States, 126 U.S.App.D.C. 134, 139, 375 F.2d 310, 315 (1966), cert. denied 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); Rhone v. United States, 125 U.S.App.D.C. 47, 365 F.2d 980 (1966); Opper v. United States, 348 U.S. 84, 95, 75 S.Ct. 158, 99 L.Ed. 101 (1954).

██ Judge Edgerton succinctly summed up the applicable principles in Dykes v. United States, 114 U.S.App.D.C. 189, 190, 313 F.2d 580, 581 (1962), cert. de-

nied 374 U.S. 837, 83 S.Ct. 1889, 10 L.Ed.2d 1059 (1963). That one defendant might have a better chance of acquittal if tried separately does not establish his right to a severance.

We find no error in the denial of the appellant's motion for severance, as no Rule 14 prejudice has been shown.

# II

The District Court conducted a pre-trial hearing concerning identification procedures, ruling thereafter that the various procedures were proper, and that in any event an independent source existed for a courtroom identification by Nader.

After one of the tellers had cried out when confronted by William Hopkins brandishing a gun, Nader came to the tellers' area and William waved the gun at him. As the two accused left the bank, Nader followed them, only to lose sight of them as they turned a street corner. Presently re-sighting this appellant as he entered a store, Nader shadowed the appellant but lost sight of him while seeking a police officer. Returning to the street, he saw the appellant for a third time, and approached him as the fugitive halted at a store window. He noted the appellant's size, build, three-quarter length black coat and bright green trousers and at times had a clear view of the appellant's face.

That same evening, at the FBI laboratory, the pictures taken by the automatic cameras in the bank were displayed. Without conversation with other witnesses or officers, Nader announced, "That's one of them" upon viewing the appellant's picture.

---

5. United States v. Parker, 143 U.S.App.D.C. 57–58, 442 F.2d 779, 780 (1971); see cases cited in United States v. McCall and Cephas, 148 U.S.App.D.C. 444, 447, 460 F.2d 952, 955 (1972).

6. The trial court was informed that William Hopkins would not take the stand; there were no statements by William Hopkins received in evidence against this appellant; at the appellant's request, the

jury was instructed: "The fact that the defendants are brothers in and of itself should not lead you to conclude that these two men acted in concert in robbing the bank"; in short, no prejudice was shown. Cf. Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960) where, as here, no motion for a new trial under Rule 33 had been submitted, and it was not enough to rely solely upon a motion for acquittal.

Nader again identified this appellant at a line-up attended by Nader and three other bank employees. At the hearing, Nader testified he could have identified the robbers at the line-up even if he never had seen the bank pictures. The appellant conceded, on brief, that only the testimony of Mrs. Rodwell and that of Nader was of "any significance to appellant's case since none of the other witnesses identified appellant or gave any testimony with respect to him."

Nader's instantaneous recognition of the appellant's photographs at the FBI laboratory was clearly related not only to the appellant's presence in the bank but to the pursuit conducted by Nader as he followed this appellant for some ten minutes in and around a local store while vainly seeking police help.

■ The appellant complains that the viewing of the photographs at the laboratory was improper since Nader and three other bank employees viewed the display "as a group." [7]

Under all of the circumstances the trial judge found nothing impermissibly suggestive in Nader's identification of the appellant. We find no evidence that the identification procedures here involved were so unduly prejudicial as fatally to taint this appellant's conviction. We find lacking such circumstances as might have given rise to "a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). See also United States v. Ervin, 436 F.2d 1331 (5 Cir. 1971), where, during aircraft piracy, a passenger had taken a photograph of the accused. The court said that the snapshot was not suggestive at all, it suggested no "possibilities" for it showed facts.

Here the bank's cameras were taking frames of every step involved in the perpetration of the robbery. It was stipulated by the defendant that photographic Exhibits 3A through 3L depicted this appellant. Appellant's trial counsel in argument to the jury stated, in part:

Ladies and gentlemen, let me make it clear to you and very clear to you that there is no dispute, no dispute here but that the person depicted in Government Exhibits 3A through 3L are pictures of the defendant John Hopkins.

■ Nader's pre-arrest identification at the laboratory coincided with the pre-arrest details supplied by Mrs. Rodwell. At trial she made no identification during direct examination. On cross-examination, defense counsel brought out that she had not identified the appellant at a line-up. Thereafter on re-direct examination, without objection, she made an in-court identification of this appellant. The argument by defense counsel makes it clear beyond peradventure that there was no semblance of irreparable misidentification.[8] We find no error respecting the identification procedures here utilized.[9]

7. We certainly do not approve the simultaneous exhibition of the photographs to the bank employees rather than causing an independent viewing by each employee. Through sheer fortuity no harm was done to this appellant in that none of the bank employee witnsses except Nader gave any testimony respecting identification of this appellant.

8. United States v. Sutherland, 428 F.2d 1152 (5 Cir. 1970); United States v. Harrison, 460 F.2d 270 (2 Cir. 1972). Appellant's trial counsel was bound to recognize the solid quality of the prosecution's evidence as to identification for in closing before the jury he additionally argued:

As the evidence shows, he was in the bank during the course of a bank robbery, but, ladies and gentlemen, as his Honor will instruct you, the presence of a person within a bank during the course of a bank robbery is certainly not enough to convict someone of the crime of bank robbery.

9. Specifically, let it be noted that Nader's pre-arrest viewing of the bank's photographs at the F.B.I. laboratory gave rise to no right-to-counsel question. See United States v. Ash, 149 U.S.App.D.C. 1, 461 F.2d 92, (en banc Mar. 1, 1972), cert. granted, 405 U.S. 909, 92 S.Ct. 2436, 32 L.Ed.2d 682 (1972).

## III

■ Appellant has contended that unlawfully he had been denied his right to a speedy trial. We have been over this ground so often that expansive treatment is unnecessary. Compendious reference to the record will provide appropriate background for our rejection of this claim.

This appellant was arrested on December 19, 1969; was accorded a preliminary hearing December 29, 1969; was indicted February 10, 1970 and arraigned March 4, 1970. Thereafter from time to time over the next seven months, there were filed assorted defense motions requiring attention by the District Court down to October 28, 1970, when the defense first moved for a speedy trial. With the Government announcing its readiness for trial at any time, appellant's trial counsel represented he was then involved in another lengthy case. This case was next called for trial December 3, 1970, whereupon the appellant's trial counsel requested a trial date be set for January 11, 1971, at which time the trial went forward. It is quite apparent that appellant and his co-defendant by that time had exhausted "the system of safeguards designed to protect the accused." Blunt v. United States, 131 U.S.App.D.C. 306, 310, 404 F.2d 1283, 1287 (1968), cert. denied 394 U.S. 909, 89 S.Ct. 1021, 21 L.Ed.2d 221 (1969); and see generally, Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230 (en banc, 1968), cert. denied 394 U.S. 964, 89 S.Ct. 1318, 22 L. Ed.2d 567 (1969).

The Government here had sought no continuance, there was no suggestion of oppressive conduct on its part, whatever delay may have occurred was not shown to be purposeful on the part of the prosecution, and particularly, the appellant developed no evidence that his defense in any manner had been prejudiced. In such respects the Court has emphasized for us governing criteria in United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966).[10] Yet other recent cases in our court have discussed principles applicable here. See, e. g., United States v. McCray, 140 U.S. App.D.C. 67, 433 F.2d 1173 (1970); Hinton v. United States, 137 U.S.App. D.C. 388, 424 F.2d 876 (1969); Bynum v. United States, 133 U.S.App.D.C. 4, 6, 408 F.2d 1207, 1209 (1968), cert. denied 394 U.S. 935, 89 S.Ct. 1211, 22 L.Ed.2d 466 (1969); cf. Harling v. United States, 130 U.S.App.D.C. 327, 330, 401 F.2d 392 (1968), cert. denied 393 U.S. 1068, 89 S.Ct. 725, 21 L.Ed.2d 711 (1969); Hedgepeth v. United States, 125 U.S. App.D.C. 19, 365 F.2d 952 (1966); Hedgepeth v. United States, 124 U.S. App.D.C. 291, 294, 364 F.2d 684, 687 (1966); United States v. Medley, 146 U.S.App.D.C. 396, 452 F.2d 1325 (1971); United States v. Dunn, 148 U.S.App.D. C. 91, 101, 459 F.2d 1115, 1125 (1972); cf. United States v. Aberson, 419 F.2d 820 (2 Cir.), cert. denied 397 U.S. 1066, 90 S.Ct. 1497, 25 L.Ed.2d 687 (1970) and United States v. Maxwell, 383 F.2d 437 (2 Cir. 1967), cert. denied 389 U.S. 1057, 88 S.Ct. 809, 19 L.Ed.2d 856 (1968).

Here, in short, there was no undue delay in bringing the case to trial nor was prejudice established resulting from whatever delay had occurred. The trial court committed no error respecting the delay issue.

## IV

Although we have found no error requiring reversal of this appellant's convictions, we think counsel appointed by this court properly has expressed dissatisfaction concerning developments at the sentencing hearing. The Government itself does not "oppose a remand for resentencing" but suggests that further discussion may be obviated. The situation is not to be remedied that simply.

10. Compare United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) where the Court has collected cases involving various delay situations, both before and after arrest; and see our recent opinion in United States v. Bishton, 150 U.S.App.D.C. ——, 463 F.2d 887 (1972).

### (a)

For one thing, it seems clear enough that the sentencing judge had not adequately employed criteria which should attend upon the pronouncement of sentence. To illustrate, trial counsel, joined by the appellant at allocution, had urged leniency ostensibly on the theory that specific acts of affirmative participation by the appellant had not been shown.[11] Such had been the tenor of the defense, indeed it came out that the appellant had told the probation officer, "I didn't think I would be found guilty because I didn't do anything."

Perhaps with a degree of pardonable exasperation, the sentencing judge commented:

> My chief concern, and I have taken all of this into consideration, all the possibilities here, is you don't even have any remorse for your actions. You entered a bank with the intention of committing a robbery, assault with a dangerous weapon, and one of these offenses carries an entire life imprisonment. You are still protesting that you didn't do it when they had a life-size photograph with an individual witness making a comment about what you said when you were at the bank at the counter. The first step to rehabilitation is remorsefulness.

■ We found a not dissimilar situation in Scott v. United States, 135 U.S. App.D.C. 377, 382, 419 F.2d 264, 269 (1969), where the sentencing judge said, "If you had pleaded guilty to this offense, I might have been more lenient with you." There, it was seen that Scott was paying a price for demanding a trial. So, here, this appellant was not bound to yield a constitutional right only to be punished for not doing so. At sentencing the judge was bound to take into account such criteria as would best serve the interests of the accused and of society.[12] He was to consider also the statutorily permissible sentence, the background of the accused, the possibilities of rehabilitation, and such other factors [13] as have been the subject of judicial comment.[14]

■ Certainly this appellant's sentence was not to depend upon his refusal to express remorse, and we find ourselves unable to appraise the extent to which the reaction of the judge might have influenced his disposition of the case.[15]

### (b)

This appellant and his brother were found guilty on one count of entering a bank with intent to commit robbery, on two counts of armed robbery and four counts of assault with a dangerous weapon. Thereafter this appellant was sentenced to concurrent [16] terms of four to twelve years on the "entering" count, four to twelve years for armed robbery and three to ten years for assault with

---

11. But this was not a "mere presence" case, cf. Bailey v. United States, 135 U.S.App. D.C. 95, 416 F.2d 1110 (1969); rather, the evidence overwhelmingly disclosed joint participation by these robbers, and the jury so found. This appellant was to be treated as a principal. 18 U.S.C. § 2; D.C.Code § 22–105 (1967) and see as applicable here, Nye & Nissen v. United States, 336 U.S. 613, 619–620, 69 S.Ct. 766, 93 L.Ed. 919 (1949), United States v. Lumpkin, 145 U.S.App.D.C. 162, 448 F.2d 1085 (1971), United States v. Parker, 143 U.S.App.D.C. 57, 442 F.2d 779 (1971).

12. Leach v. United States, 122 U.S.App. D.C. 280, 353 F.2d 451 (1965) and cases cited, cert. denied 383 U.S. 917, 86 S.Ct. 911, 15 L.Ed.2d 672 (1966); cf. United States v. Freeman, 149 U.S.App.D.C. 186, 462 F.2d 290 (1972).

13. Williams v. New York, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

14. See generally Scott v. United States, text, *supra*.

15. Compare Scott v. United States, *supra*, 135 U.S.App.D.C. at 380, 419 F.2d at 267, where Scott at allocution continued to assert innocence, apparently impelling the judge to comment, "I hope sometime I hear some defendant say, 'Judge, I am sorry, I am sorry for what I did'."

16. See discussion in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) and United States v. Gaines, 460 F.2d 176 (2 Cir., 1972).

a dangerous weapon. Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L. Ed.2d 370 (1957) taught that a concurrent sentence for entering with intent to rob could not be sustained where the crime of robbery had been consummated;[17] compare Heflin v. United States, 358 U.S. 415, 419, 79 S.Ct. 451, 3 L.Ed. 2d 407 (1959).

Clearly we must direct that the District Court vacate the judgment and sentence on the "entering" count.

Like disposition is required respecting one of the two robbery counts, for stripped down to the basic reality, the robbery here constituted a unitary transaction.[18]

Finally, we must vacate the judgment and the sentence on three of the four counts of assault with a dangerous weapon, vacate the sentence on one such count and remand to the District Court for resentencing on that count.[19] We entertain no doubt whatever that the bank employees and Mrs. Rodwell were put in fear at the point of a pistol, but it seems clear enough that the joint conduct of the robbers constituted a single continuous transaction.[20]

## V

We have considered appellant's arguments respecting details of other claims but perceive no need for further discussion. This case will be remanded to the District Court for disposition conformably to this opinion.

Remanded, with instructions.

---

17. We have applied the Prince rule in United States v. Parker, supra, n. 5, in United States v. Spears, 145 U.S.App. D.C. 284, 292–293, 449 F.2d 946, 954–955 (1971), in Bryant v. United States, 135 U.S.App.D.C. 138, 417 F.2d 555 (1969), and compare United States v. Hooper, 139 U.S.App.D.C. 171, 432 F.2d 604 (1970), where the accused had been convicted of two separate counts of robbery involving the same currency, whereupon we vacated the judgment and sentence on one count but affirmed the conviction and the sentence imposed on the second count. But see Coleman v. United States, 137 U.S. App.D.C. 48, 58, 420 F.2d 616, 626 (1969) re "entering" count based on 18 U.S.C. § 2113(a).

18. We thus distinguish Barringer v. United States, 130 U.S.App.D.C. 186, 399 F.2d 557 (1968), cert. denied 393 U.S. 1057,

89 S.Ct. 697, 21 L.Ed.2d 698 (1969), for, the record shows, there were two different victims, with separate acts necessary to take certain amounts of money from each. See discussion in United States v. Alexander and Murdock, U.S.App.D.C. sl. op. 15–16 (Apr. 21, 1972); cf. Ingram v. United States, 122 U.S.App.D.C. 334, 353 F.2d 872 (1965).

19. United States v. Alexander and Murdock, supra, n. 18, sl. op. 19–20; cf. Sutton v. United States, 140 U.S.App.D.C. 188, 198, 434 F.2d 462, 472 (1970).

20. See Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), Bell v. United States, 349 U.S. 81, 75 S. Ct. 620, 99 L.Ed. 905 (1955) and United States v. Alexander and Murdock, supra, n. 18.