**Charles E. BAXTER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8849.**

District of Columbia Court of Appeals.

Argued Oct. 7, 1975.

Decided Feb. 17, 1976.

Rehearing and Rehearing en Banc
Denied April 15, 1976.

---

James A. Bensfield, Somerville, Mass., appointed by this court, for appellant.

Henry A. Gill, Jr., Asst. U. S. Atty., for appellee. Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson, Frederick A. Douglas, D. Michael Stroud, and John H. Bayly, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before KERN, NEBEKER and MACK, Associate Judges.

NEBEKER, Associate Judge:

Appellant seeks to overturn his conviction for petit larceny (shoplifting, D.C. Code 1973, § 22–2202) by attacking rulings

of the trial court denying severance from a codefendant and a reopening of the trial to adduce evidence to impeach him. We reject these claims of abuse of discretion and affirm.

■ In the late afternoon of July 8, 1974, appellant Baxter, a codefendant named Anthony Dean, and a companion known only as Shorty entered a valet shop which also sold dresses as part of the business operation. The shop proprietor, Walter Mitchell, was absent but the establishment was staffed by two employees, Shirley Green and Oliver James. Mrs. Green testified that while she was behind the sales counter, Shorty and Baxter approached her and began a conversation while Dean looked through the dresses on the rack near the front entrance. Baxter joined Dean in browsing through the dresses. On three separate occasions, the employees warned the trio not to take any of the dresses as the shop owner knew who they were. Shorty and Dean walked outside, looked up and down the street, and reentered the shop. Baxter then transferred dresses from a rack near the wall to a rack near the door. Shorty and Baxter engaged Mrs. Green and James in further conversation and they were joined by a customer.[1] The individuals standing near the counter blocked Mrs. Green's view of Dean as he stood near the dresses. She requested the customer to step aside so that she could view the events transpiring near the dresses. Dean then left the shop with a number of dresses draped over his arms. Mrs. Green stated that the dresses taken by Dean were similar in color to the ones Baxter had transferred to the rack near the door. An inventory conducted at the close of business that day revealed that ten dresses were missing. Appellant and Shorty did not leave with Dean but remained in the shop in an effort to exonerate themselves.

Baxter contends that the court erred in denying his motions for severance as his defense and that of his codefendant were conflicting and irreconcilable. One such motion was made early on the second day of the trial when counsel for Dean stated that should his client testify, he would state that his participation in the incident was devoid of criminal intent—that he received the dresses from Baxter and departed with them thinking they belonged to Baxter.

■ Super.Ct.Crim.R. 14 provides that a trial court may order a severance or provide whatever other relief justice requires when a defendant is prejudiced by a joint trial. *Robinson v. United States,* 93 U.S. App.D.C. 347, 349, 210 F.2d 29, 31–32 (1954). The prevailing rule is that defendants charged with jointly committing a criminal offense are to be tried jointly. *Turner v. United States,* D.C.App., 241 A. 2d 736, 738 (1968). Only when a defendant cannot receive a fair trial should a severance be ordered. *Smith v. United States,* D.C.App., 315 A.2d 163, 168 (1974). *See also United States v. Bridgeman,* 523 F.2d 1099, 1107 (D.C.Cir.1975). Phrased somewhat differently, the issue is whether the trial court abused its discretion in requiring a joint trial. Absent abuse of that power, we will affirm. *Jackson v. United States,* D.C.App., 329 A.2d 782, 787 (1974). *See also United States v. Gorham,* 523 F. 2d 1088, 1092 (D.C.Cir.1975); *United States v. Hopkins,* 150 U.S.App.D.C. 307, 310, 464 F.2d 816, 819 (1972); *United States v. Gambrill,* 146 U.S.App.D.C. 72, 83, 449 F.2d 1148, 1159 (1971); *United States v. Wilson,* 140 U.S.App.D.C. 220, 434 F.2d 494 (1970).

■ The fact that there is a testimonial conflict between codefendants is not alone sufficient ground to require a separate trial. *Allen v. United States,* 91 U.S. App.D.C. 197, 202, 202 F.2d 329, 334

---

1. Baxter's moving of the dresses and his distraction of Mrs. Green by conversation demonstrate his direct involvement in the offense. The dissent overlooks critical direct testimony as to Baxter's guilt independent of what Dean supplied later in his defense. *Infra* at pp. 385–386.

(1952). In our view Baxter has failed to demonstrate a conflict so prejudicial that a substantial possibility exists that the jury inferred that this conflict alone demonstrates the guilt of both Baxter and Dean. *United States v. Robinson,* 139 U.S.App. D.C. 286, 289, 432 F.2d 1348, 1351 (1970); *Rhone v. United States,* 125 U.S.App.D.C. 47, 365 F.2d 980 (1966). The mere fact that one defendant might have had a better chance of acquittal if tried separately does not establish his right to a severance. *Turner v. United States, supra* at 738; *Simcic v. United States,* D.C.Mun.App., 86 A.2d 98, 102 (1952). *See also United States v. Hopkins, supra,* 150 U.S.App.D.C. at 310, 464 F.2d at 819. We are unwilling to say that the generous bounds of discretion traditionally accorded the trial judge in ruling on a motion for severance were exceeded under these circumstances.

The second contention is that the trial court abused its discretion by denying Baxter's motion to reopen his defense to present newly discovered evidence to impeach the credibility of Dean. On the second day of trial, Dean testified that he took the dresses which Baxter handed to him and carried them to his grandmother's house where he left them on a balcony. He further stated that he had not seen the dresses since that time. At the close of the second day of trial, counsel for Baxter rested his case. That evening Baxter stopped by the residence described by Dean. He located an occupant of the building who would testify that an elderly lady (Mrs. Grimm) lived in the house but that she was not an ancestral relative of Dean who "stayed there for a few days." The residence reportedly contained no balconies or railings "on the house." Although the witness was working on that day, he would say that no dresses were brought to the house. With this information, counsel asked to reopen the case on the basis of this newly discovered evidence.

Assuming but not deciding that the criteria applicable to Super.Ct.Crim.R. 33[2] apply (*Heard v. United States,* D.C.App., 245 A.2d 125, 126 (1968) and *Thompson v. United States,* 88 U.S.App.D.C. 235, 236, 188 F.2d 652, 653 (1951), we hold that the trial court did not abuse its discretion in refusing to reopen the case. The proffer went to the issue of impeaching the co-fendant's testimony. Some of the expected testimony would have been hearsay and, to the extent some of it was admissible, it was collateral and not of the character that the trial judge was required to find that it was likely to produce an acquittal. *Heard v. United States, supra; Thompson v. United States, supra.* We are unable to conclude on the "new trial" test under *Heard* and *Thompson,* or on any general review of trial court discretion, that the defense was erroneously kept closed.

The judgment of conviction is, accordingly,

*Affirmed.*

MACK, Associate Judge (dissenting):

In the circumstances of this case, I believe that it was an abuse of judicial discretion for the trial court to refuse the request of the appellant to reopen his defense. The theory of that defense was that appellant, who was indisputably a regular customer of the valet shop, was there on the day of the crime for legitimate purposes. Apart from the evidence of his association with the codefendant Dean at the time, the only direct evidence which linked appellant to the commission of the crime was supplied by the codefendant himself, who testified that he was handed the dresses by appellant, and that he, thinking they belonged to appellant, carried them from the shop, took them to his (Dean's) grandmother's house at a Tenth Street address and placed them on a balcony. In my opinion this testimony

---

2. That rule is substantially identical to Fed.R.Crim.P. 33.

was crucial. There is no doubt, moreover, that the government considered it so. In his argument to the jury, government counsel conceded that, initially, the weakness in the government's case against appellant had been that no one had seen appellant give the dresses to Dean. Counsel then told the jury that it need not be concerned about this weakness because Dean had testified subsequently that appellant handed him the dresses which he took to his grandmother's house and placed on a balcony.

Appellant's newly discovered evidence, proffered before the case went to the jury,[1] allegedly would have shown through the testimony of a presumably independent witness then in court (as well as that of an investigator) that there was in fact no grandmother (of Dean at least), and that there were no balconies, and no stolen dresses left by Dean in the described house on the day in question.[2] It is questionable whether this evidence could be termed collateral or "merely impeaching" even under the stringent standards looking to the finality of judgments when a motion comes long after trial. *Cf. Heard v. United States,* D.C.App., 245 A.2d 125 (1968). Under the larcenous circumstances here, where the accused did not leave the scene of the taking, and where the asportation was accomplished by another accused who supplied the only evidence of taking by the first accused, the immediate disposition of the fruits of the crime was so intertwined with the crime itself as to be inseparable. I cannot say that given the excluded testimony there was not a substantial possibility of appellant's acquittal. *Heard, supra* at 126.

Moreover, we cannot assume that the "new trial" test of *Heard* applies to justify the exercise of the trial court's discretion in denying a motion made prior to verdict. In *Benton v. United States,* 88 U.S.App.D.C. 158, 188 F.2d 625 (1951), a motion for a new trial was filed within five days after verdict for the purpose of presenting evidence of an impeaching nature. The court held that the motion was not required to be judged by strict standards of newly discovered evidence and that the standard to be applied was whether a new trial was required in the interest of justice. *See also Brodie v. United States,* 111 U.S.App.D.C. 170, 295 F.2d 157 (1961). With even greater reason, this latter standard should operate here.

I would reverse and remand for a new trial in the interest of justice.

---

1. The parties rested and the jury was excused for the evening on one day; at the opening of court on the following morning, appellant's counsel asked leave to present the testimony.

2. Understandably the strongest objection to reopening came from counsel for the codefendant Dean (to whom government counsel "deferred"), who argued that the request was

for the purpose of destroying his client's defense and that if the case were reopened, he would be required to ask for a recess to seek further investigation for surebuttal—making for a trial *ad infinitum.* In denying reopening, the court observed that it would create "other and further issues in the case" and that the evidence did not go to the heart of the matter.